# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH GOODLY, on behalf of himself and other persons similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 16-CV-334-GKF-tlw |
| CHECK-6 INC., YAREMA SOS, BRIAN BRURUD, DENNIS ROMANO, S. ERIC BENSON, LAURA OWEN, and JOHN DILLON, | ) ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the court is the Motion to Compel Arbitration [Doc. #96] filed by defendant Check-6 Inc.

Fourteen months after this lawsuit was filed, and over six weeks after the class action opt-in period closed, Check-6 filed the present motion to compel plaintiffs to individually arbitrate their claims, and to request a stay pending arbitration. Check-6 states that each opt-in plaintiff signed an agreement that included an arbitration clause. Plaintiffs respond that Check-6 has waived its right to compel arbitration.

The Tenth Circuit has recognized waiver of a party's right to arbitrate when a party's conduct in litigation forecloses that right. *See BOSC, Inc. v. Bd. of Cty. Comm'rs of Cty. of Bernalillo*, 853 F.3d 1165, 1170 (10th Cir. 2017) (citing *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1205 (10th Cir. 2016)). "A party asserting a waiver of arbitration has a heavy burden of proof." *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 466 (10th Cir. 1988) (citing *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d

1023, 1025 (11th Cir. 1982)). "[T]here is no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case." *BOSC*, 853 F.3d at 1170 (quoting *Reid Burton Construction, Inc. v. Carpenters District Council of Southern Colorado*, 614 F.2d 698, 702 (10th Cir. 1980)) (internal quotations omitted).

The Tenth Circuit has identified several factors useful in analyzing waiver, which it summarized in *Peterson*, *supra*:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps, *e.g.*, taking advantage of judicial discovery procedures not available in arbitration had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

849 F.2d at 467–68 (alterations and quotations omitted). The listing of factors was not intended to suggest a mechanical process in which each factor is assessed and the side with the greater number of favorable factors prevails, nor does it suggest the list of factors is exclusive. *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 773 (10th Cir. 2010) (internal quotations omitted). "Instead, these factors reflect principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration." *BOSC*, 853 F.3d at 1170. An important consideration in assessing waiver is whether the party now seeking arbitration is improperly manipulating the judicial process. *Hill*, 603 F.3d at 773.

As for the first factor, Check-6's actions have not been consistent with an intent to arbitrate. Plaintiff Joseph Goodly filed this lawsuit in the Eastern District of Louisiana on March 7, 2016. Check-6 moved to transfer venue to this court. After transfer, it answered the Complaint without raising arbitration as an affirmative defense, and did not demand arbitration until May 4, 2017, nearly fourteen months later. Plaintiffs assert, and Check-6 does not dispute, that Check-6 opposed

2

Goodly's Motion for Conditional Class Certification without mentioning arbitration, and answered discovery requests from eighteen opt-in plaintiffs. On December 5, 2016, two defendants in this case, Brian Brurud and Yarema Sos—Check-6 directors—sent a letter on Check-6 letterhead to "current and former Check-6 Contractors" to discourage potential class members from opting in, but did not mention arbitration or express an intent to arbitrate plaintiffs' claims. On March 14, 2017—just two weeks before the opt-in deadline of March 31, 2017—the parties, including Check-6, jointly moved to amend the initial scheduling order to extend all remaining dates by 180 days. Granting the joint motion, the court rescheduled the jury trial from July 17, 2017 to January 16, 2018. Nothing in the joint motion suggested Check-6 intended to compel arbitration; to the contrary, the parties sought additional time to complete discovery to prepare for the trial date set forth in the Order.

Check-6 contends it did not have an accurate depiction of the scope of this litigation until the opt-in period closed on March 31, 2017, and that it couldn't assess whether all parties and claims were governed by arbitration agreements until April 1, 2017. And yet, Check-6 also contends plaintiffs must be compelled to arbitrate their claims individually. That argument undermines Check-6's explanation as to why it waited to demand arbitration until after the opt-in period had closed. If Check-6 was intent on having each plaintiff arbitrate his or her claims individually, Check-6 needn't have waited until *all* plaintiffs opted in. It could have moved to compel arbitration of individual plaintiffs, including Mr. Goodly, as each opted in. In fact, if Check-6 intended to arbitrate plaintiffs' claims individually, there was no need to have wasted the court's and named plaintiff's time litigating conditional class certification at all. *Cf. In re Cox Enterprises, Inc. Set-top Cable TV Box Antitrust Litig.*, 790 F.3d 1112, 1120 (10th Cir. 2015) (citing *Edwards v. First Am. Corp.,* 289 F.R.D. 296, 307 (C.D.Cal.2012) (holding that defendants

who waited to mention arbitration until after a class was certified had waived their right to arbitrate because they "could have asserted their intention to raise arbitration as a defense at a much earlier stage in the proceeding")).

The court finds Check-6's actions have been inconsistent with the right to arbitrate. The first *Peterson* factor supports waiver.

As to the second factor, the court finds the litigation machinery has been substantially invoked, and the parties were well into preparation of this lawsuit before Check-6 notified plaintiffs of its intent to arbitrate. The court and the parties had devoted substantial time and resources into litigating conditional class certification, and preparing, mailing and receiving opt-in notices. Significant discovery has taken place, including the production of approximately 2,000 documents and the answering of interrogatories. Over 100 filings have been entered on the docket, and the parties have now entered into two pretrial scheduling orders. And the first scheduled jury trial set July 17, 2017 was continued by a Joint Motion "to allow the Parties adequate time to properly complete discovery" [Doc. #90, p. 2].

As to the third *Peterson* factor, the court finds Check-6 delayed for a long period—fourteen months—before seeking a stay. This third factor supports waiver.

The fourth factor—whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings—does not apply, as Check-6 has not filed a counterclaim. However, plaintiffs argue Check-6 has no claim against them to assert, and Check-6 does not dispute that argument. Accordingly, the court gives this factor little weight.

The fifth factor is whether important intervening steps, *e.g.*, taking advantage of judicial discovery procedures not available in arbitration, have taken place. Plaintiffs do not identify

discovery procedures taken thus far that would not be available in arbitration. The court finds the fifth factor does not support waiver.

With respect to the sixth factor, the court finds that Check-6's delay in seeking enforcement of the arbitration clause has affected, misled, and prejudiced plaintiffs. As a result of Check-6's delay, the lead plaintiff and plaintiffs' counsel have litigated conditional certification, issued notice to potential class members, and assisted opt-in plaintiffs in filing notices of consent to join the collective action, and the time, efforts, and money expended in doing so would be wasted if plaintiffs are now prevented from seeking a final class-certification order and are required to arbitrate their claims individually. Thus, Check-6's delay affected the lead plaintiff and plaintiffs' counsel. The delay misled all plaintiffs because Check-6's actions indicated it intended to litigate this matter in court. And Check-6's delay prejudiced the lead plaintiff and plaintiffs' counsel because, had Check-6 demanded arbitration earlier, they might have been spared significant litigation expense.

Check-6 argues that, even if waiver applies to plaintiff Goodly's claims, the remaining opt-in plaintiffs cannot benefit from the same waiver. It cites *Collado v. J. & G. Transp., Inc.*, 2015 WL 1478609 (S.D. Fla. Mar. 31, 2015) in support. In *Collado*, the defendants moved to compel arbitration of the claims of the opt-in plaintiffs only. *Id.* at *6. The court, using the Eleventh Circuit's two-part test to determine if a party has waived its right to arbitrate, held that the opt-in plaintiffs had incurred no significant litigation expenses, and that the defendants had not waived their rights to arbitrate their claims. *Id.*

*Collado* is not persuasive because it does not apply Tenth Circuit case law regarding waiver. Moreover, *Collado* is factually distinguishable because Check-6's delay has prejudiced not only Mr. Goodly, but also the opt-in plaintiffs. The arbitration agreement Check-6 belatedly

5

seeks to enforce requires that "[t]he demand for arbitration be filed no later than one (1) year after the dispute arises or the claim occurs," and states that "[f]ailure to file the demand within the one-year period shall be deemed a full waiver of the claim." [Doc. #96-1, p. 17]. Check-6's conduct—including, among other things, allowing the class notice and opt-in period to expire, and moving for an extension of 180 days just two weeks before the opt-in deadline—was misleading if Check-6 intended to compel arbitration. Opt-in plaintiffs were led to believe that a conditional class action was proceeding and they did not need to file an arbitration demand within the one-year limitations period. The court therefore concludes the sixth *Peterson* factor supports waiver.

Next, the court considers whether Check-6, in belatedly seeking arbitration, may be improperly manipulating the judicial process. *See Hill*, 603 F.3d at 774 ("[a] court may look to several of the *Peterson* factors in finding waiver on the ground that ordering arbitration would permit a party to manipulate the judicial process—for example, by allowing it to take a mulligan if the court proceeding is progressing unfavorably . . . .").

Check-6's conduct is consistent with an attempt to avoid the consequences of two court rulings. First, Check-6 filed its Motion to Compel Arbitration on May 11, 2017, just five days before defendants were required to pay $20,282.05 in court-ordered fees and costs incurred by plaintiff Goodly and plaintiffs' counsel in litigating Goodly's Emergency Motion for Protective Order, Sanctions, and Corrective Notice. Less than half an hour after Check-6 filed its Motion to Compel Arbitration, the defendants filed a motion to stay enforcement of the court's Order requiring that payment. The timing of Check-6's Motion to Compel Arbitration is more consistent with trying to avoid the payment than with Check-6's stated rationale of waiting to see whether all opt-in plaintiffs were subject to arbitration agreements. If Check-6 had merely been waiting for

6

the opt-in period to close on March 31, 2017, it needn't have waited until May 4, 2017 to demand arbitration.

Second, an order compelling arbitration would allow Check-6 to "take a mulligan" on conditional class certification. Check-6 opposed plaintiffs' Motion for Conditional Class Certification and Court-Authorized Notice, which the court granted in part, certifying a conditional class and allowing the opt-in process to move forward. Compelling individual arbitration would undo the effect of the court's Order conditionally certifying the class.

Finally, an order compelling arbitration would allow Check-6 to manipulate the judicial process by generally delaying the ultimate resolution of plaintiffs' claims. In *Robinson v. Food Service of Belton, Inc.*, the court found that the defendants had waived their right to enforce arbitration agreements by, among other things, not raising the issue of arbitration until more than ten months after the suit commenced. 415 F. Supp. 1221, 1225, 1226 (D. Kan. 2005). As stated above, Check-6 waited nearly fourteen months from the filing of this lawsuit to demand arbitration.

Check-6's conduct in this case suggests it considers delay to be to its advantage. It has acted to delay the ultimate resolution of plaintiffs' claims by, among other things, failing to issue discovery requests despite having sought an extension of time to complete discovery, waiting until after the notice and opt-in period was complete before demanding arbitration, and interfering with the notice and opt-in process *via* the December 15, 2016 letter sent by two of its directors. If the court were to grant Check-6's belated request for arbitration, much of the work done by the parties and the court in this case will have been unnecessary and Check-6 will have manipulated the judicial process by using these proceedings as an instrument of delay.

Upon consideration of the briefs and materials submitted by the parties, the court concludes Check-6 has waived its right to demand arbitration.

WHEREFORE, Check-6's Motion to Compel Arbitration [Doc. #96] is denied.

IT IS SO ORDERED this 1st day of August, 2017.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT