IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH GOODLY, on behalf of himself and other persons similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>CHECK-6, INC., YAREMA SOS, BRIAN BRURUD, DENNIS ROMANO, S. ERIC BENSON, LAURA OWEN, and JOHN DILLON,<br><br>    Defendants. | Case No. 16-CV-334-GKF-JFJ |

## OPINION AND ORDER

In this action, the plaintiffs seek overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Before the court is the defendants' Motion for Partial Summary Judgment [Doc. 277], in which the defendants argue that the overtime claims of certain plaintiffs fall, in whole or in part, within the foreign workplace exemption pursuant to 29 U.S.C. § 213(f). For the reasons set forth below, the court grants in part and denies in part the motion.

### I. Background

Unless otherwise noted, the court treats the following facts as undisputed for the purpose of deciding the instant motion. In this collective action, there are currently nineteen plaintiffs, each of whom contracted with Check-6, Inc. to act as a "coach" at client worksites. The instant motion does not apply to eight of the plaintiffs—John David, Joseph Flatley, Lia Mastronardi, Randall Scully, Richard Wolfe, Gary Daige, Harold Schmitt, and Gary Snells—who, according to the defendants, performed all coaching services for Check-6 clients in the United States or a territory covered under the FLSA. [Doc. 277, p. 19].

Four of the plaintiffs—Aleksandr Goncharov, David Fuller, Edward Swanda, and Stephen Wall—performed all coaching services internationally. [Doc. 277, pp. 6–8 ¶¶ 1–7; Doc. 297, p. 2 n.1, pp. 3–4 ¶¶ 1–7]. Messrs. Goncharov, Fuller, and Swanda never traveled to the United States for any reason in connection with their coaching for Check-6. [Doc. 277, pp. 6–8 ¶¶ 2, 4, 6; Doc. 297, pp. 3–4 ¶¶ 2, 4, 6]. Mr. Wall only traveled to the United States in connection with Check-6 for three days of training. [Doc. 277, p. 8 ¶ 9; Doc. 297, p. 4 ¶ 9].

Plaintiffs Joseph Goodly and Keith Proze both resided in Louisiana during their tenure with Check-6. [Doc. 277, p. 8 ¶¶ 12, 14; Doc. 297, p. 4 ¶¶ 12, 14]. They both attended training in the United States and performed coaching services on the Vantage Titanium Explorer, a deepwater drillship flagged by the Bahamas and located off the Louisiana coast in the Gulf of Mexico. [Doc. 277, p. 8 ¶¶ 10–11, 13–14; Doc. 297, p. 4 ¶¶ 10–11, 13–14; Doc. 297-2, p. 1 ¶ 2; Doc. 297-3, p. 1 ¶ 2].

Plaintiff Thomas Howard resided in Virginia during his tenure with Check-6. [Doc. 277, p. 9 ¶ 18; Doc. 297, p. 5 ¶ 18]. He attended training in the United States and performed coaching services in the United Kingdom, Guyana, Angola, South Africa, and Romania, on land rigs and ocean rigs flagged by the United Kingdom, the Marshall Islands, Liberia, and Vanuatu. [Doc. 277, pp. 8–9 ¶¶ 16–17; Doc. 297, p. 5 ¶¶ 16–17].

Plaintiff Randal Newbold resided in Michigan during his tenure with Check-6. [Doc. 277, p. 9 ¶ 21; Doc. 297, p. 5 ¶ 21]. He attended training in the United States and performed coaching services in Australia, Norway, Egypt, Malaysia, Thailand, and Iraq, on land rigs and ocean rigs flagged by Panama, Vanuatu, and the Marshall Islands. [Doc. 277, p. 9 ¶¶ 19–20; Doc. 297, p. 5 ¶¶ 19–20].

Plaintiff Joseph Powers resided in North Carolina and Virginia during his tenure with Check-6. [Doc. 277, p. 9 ¶ 24; Doc. 297, p. 5 ¶ 24]. He attended training in the United States and performed coaching services in the Gulf of Mexico, Nigeria, Denmark, and Thailand, on rigs flagged by Liberia, Denmark, Vanuatu, and Singapore. [Doc. 277, p. 9 ¶¶ 22–23; Doc. 297, p. 5 ¶¶ 22–23].

Plaintiff Randall Tashjian resided in California during his tenure with Check-6. [Doc. 277, p. 10 ¶ 27; Doc. 297, p. 6 ¶ 27]. He attended training in the United States and performed coaching services in the United States and Canada and in the Gulf of Mexico on ocean rigs flagged by Liberia. [Doc. 277, p. 10 ¶¶ 25–26; Doc. 297, pp. 5–6 ¶¶ 25–26].

Plaintiff George Wilson resided in Louisiana and Nevada during his tenure with Check-6. [Doc. 277, p. 10 ¶ 30; Doc. 297, p. 6 ¶ 30]. He attended training in the United States and performed coaching services in the United States and in the Gulf of Mexico, which included work on ocean rigs flagged by Liberia. [Doc. 277, p. 10 ¶¶ 28–29; Doc. 297, p. 6 ¶¶ 28–29].

No training weeks were over forty working hours for any of the plaintiffs, except the plaintiffs assert that initial on-the-job training provided to coaches while acting as a "wingman" required more than forty working hours in a workweek. [Doc. 277, p. 10 ¶ 31; Doc. 297, p. 6 ¶ 31].

Messrs. Goodly, Proze, Howard, Newbold, Powers, Tashjian, and Wilson all assert in sworn declarations that their work for Check-6 required them to begin working prior to arriving at client worksites, to work during the transit to and from client worksites, and to conclude work after returning from client worksites. [Doc. 297-2, p. 2 ¶ 8; Doc. 297-3, p. 2 ¶ 8; Doc. 297-4, p. 2 ¶ 8; Doc. 297-5, p. 2 ¶ 8; Doc. 297-6, p. 2 ¶ 8; Doc. 297-7, p. 3 ¶ 9; Doc. 297-8, p. 2 ¶ 7].

## II. Standard of Review

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## III. Analysis

The plaintiffs bring their claims pursuant to 29 U.S.C. § 207, which requires employers to pay non-exempt employees additional compensation for hours worked over forty hours per workweek. 29 U.S.C. § 207(a). It is undisputed that some of the plaintiffs performed work outside the territorial jurisdiction of the United States.

Courts generally presume that federal statutes apply only within the territorial jurisdiction of the United States, absent clearly expressed congressional intent to the contrary. *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100 (2016) (citing *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010)). The presumption "serves to avoid the international discord that can result when U.S. law is applied to conduct in foreign countries." *RJR Nabisco*, 136 S. Ct. at 2100. It also reflects the "commonsense notion that Congress generally legislates with domestic concerns in mind." *Id.* (quoting *Smith v. United States*, 507 U.S. 197, 204, n.5 (1993)). A court in the Southern District of Texas invoked the presumption in the FLSA context in *Hodgson v. Union de Permisionarios Circulo Rojo, S. de R. L.*, 331 F. Supp. 1119, 1122 (S.D. Tex. 1971). That case involved Mexican employees of a Mexican corporation who drove buses between Mexico and Texas. Relying on a majority of the work being performed in Mexico and an analogy to a foreign-owned ship with foreign employees being temporarily in port, the court held that the FLSA was inapplicable because of the presumption against extraterritorial application. *See id.* at 1121–22, *discussed by Gantchar v. United Airlines, Inc.*, No. 93 C 1457, 1995 WL 137053, at *7 n.14 (N.D. Ill. Mar. 28, 1995) ("The court's holding [in *Hodgson*] appears to rely entirely on the presumption against extraterritorial application, not directly on the § 213(f) exemption.").

Additionally, Congress expressly limited the FLSA's geographical reach by enacting 29 U.S.C. § 213(f), which provides:

> The provisions of sections 206, 207, 211, and 212 of this title shall not apply with respect to any employee whose services during the workweek are performed in a workplace within a foreign country or within territory under the jurisdiction of the United States other than the following: a State of the United States; the District of Columbia; Puerto Rico; the Virgin Islands; outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act (ch. 345, 67 Stat. 462); American Samoa; Guam; Wake Island; Eniwetok Atoll; Kwajalein Atoll; and Johnston Island.

5

The Tenth Circuit has stated in a footnote that section 213(f) provides "for no extraterritorial application" and has characterized the provision as a clear expression of congressional intent, which "courts should be loath to circumvent." *Zahourek v. Arthur Young & Co.*, 750 F.2d 827, 829 (10th Cir. 1984).

In their response brief, the plaintiffs cite *Cruz v. Chesapeake Shipping Inc.*, 738 F. Supp. 809, 818 (D. Del. 1990), *aff'd*, 932 F.2d 218 (3d Cir. 1991). [Doc. 297, p. 8]. In *Cruz*, seamen on vessels located in the Persian Gulf attempted to invoke the minimum wage provisions of the FLSA because the vessels were flying the American flag in order to gain the protection of American naval forces during wartime. 738 F. Supp. at 810. The Third Circuit upheld the district court's ruling that the seamen were not entitled to minimum wages under the FLSA. 932 F.2d at 220.

As highlighted by the plaintiffs, the district court in *Cruz* advanced a somewhat narrow reading of section 213(f), suggesting that "only foreign to foreign voyages should fall within the foreign workplace exception of Section 213(f)." 738 F. Supp. at 823. This reading has limited relevance here for a few reasons. First, the district court's suggestion constituted *dicta*, as the court found that, regardless, the FLSA did not apply. *See id.* ("Even with this limited application of Section 213(f), however, the Plaintiffs fall within the exclusion; the minimum wage provisions do not apply to them."). Second, the court's analysis in *Cruz* arose in a very different context, which concerned minimum wage protections for seamen on American-flagged vessels—not overtime compensation, as the plaintiffs seek in this action. Notably, the FLSA expressly exempts from its overtime requirements "any employee employed as a seaman." 29 U.S.C. § 213(b)(6). Third, the district court's narrow reading of section 213(f) relied on "the policy of interpreting FLSA exclusions narrowly." 738 F. Supp. at 823. However, the Supreme Court recently rejected this principle as a useful guidepost for interpreting the FLSA and held that courts have no license to

give FLSA exemptions "anything but a fair reading." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018).

Based on the parties' briefing, there appears to be some confusion as to several issues regarding the FLSA's application to the work performed by the plaintiffs. The court discusses these issues below.

**A. Plaintiffs Aleksandr Goncharov, David Fuller, Edward Swanda, and Stephen Wall**

The plaintiffs concede that Messrs. Goncharov, Fuller, and Swanda performed all work internationally and never traveled to the United States in connection with Check-6. As such, the work performed for Check-6 by Messrs. Goncharov, Fuller, and Swanda falls within the foreign workplace exemption, and their claims must be dismissed. *See* 29 U.S.C. § 213(f).

Furthermore, the plaintiffs concede that Mr. Wall's only travel to the United States in connection with Check-6 was for three days of training. The plaintiffs also concede that training weeks—other than initial on-the-job training—did not involve more than forty working hours. [Doc. 277, p. 10 ¶ 31; Doc. 297, p. 6 ¶ 31; Doc. 277-5, p. 2 ¶ 5]. Because an employee must work more than forty hours in a week before overtime liability can attach, the claims of Mr. Wall must also be dismissed.

**B. Plaintiffs Thomas Howard, Randall Newbold, Joseph Goodly, Keith Proze, Joseph Powers, Randall Tashjian, and George Wilson**

**1. Workweeks Involving Work Performed Exclusively in Foreign Countries**

Pursuant to section 213(f), the plaintiffs are not entitled to overtime compensation under the FLSA for hours worked during workweeks in which all work was performed exclusively in a foreign country. 29 U.S.C. § 213(f). The complaint [Doc. 1] draws no distinction between work performed in foreign countries and work performed in the U.S. territories enumerated in 29 U.S.C. § 213(f). The defendants are entitled to summary judgment to the extent the plaintiffs assert

overtime claims for hours worked during workweeks in which all work was performed exclusively in a foreign country.

### 2. Work Performed in the Gulf of Mexico

In their opening brief, the defendants seek summary judgment with respect to work performed on certain "rigs/platforms" in the Gulf of Mexico. [Doc. 277, p. 13]. In their reply brief, the defendants modify their position as follows:

> Upon further inquiry, Defendants recognize that the Gulf of Mexico work may be covered by the FLSA due to it being part of the Outer Continental Shelf Lands covered by the Outer Continental Shelf Lands Act . . . . The "attached" status of these individual vessels has not been determined and thus the Gulf of Mexico work status is undetermined.

[Doc. 312, pp. 2–3]. Because there are unresolved questions of material fact, the defendants are not entitled to summary judgment with respect to work performed in the Gulf of Mexico.

### 3. Work Performed Aboard Foreign-Flagged Vessels outside U.S. Territorial Waters and the Gulf of Mexico

Some of the plaintiffs performed work aboard foreign-flagged rigs outside U.S. territorial waters and the Gulf of Mexico. For example, Joseph Powers worked on foreign-flagged rigs in the Gulf of Thailand. [Doc. 277, p. 9 ¶ 22; Doc. 297, p. 5 ¶ 22; Doc. 277-7, p. 5; Doc. 277-19, p. 3 Tr. 46:5–25]. With respect to foreign-flagged vessels, excluding those in the Gulf of Mexico, the defendants argue, "the vessel's flagship must govern as to the applicability of United States' laws, including the FLSA, aboard the vessel." [Doc. 312, p. 3]. In contrast, citing *Cruz*, 738 F. Supp. at 822, the plaintiffs contend: "Although seamen *on the high seas* are 'extra-territorial,' they are not within a foreign country and they do not fall literally within [the section 213(f)] exception." [Doc. 297, p. 14]. As noted above, *Cruz* has limited relevance here because it concerned the application of minimum wage requirements to seamen.

The court holds that the FLSA's overtime requirements do not apply to workweeks in which the plaintiffs performed all work exclusively aboard foreign-flagged vessels outside U.S. territorial waters and outside the Gulf of Mexico. Such work falls either within the foreign workplace exemption pursuant to 29 U.S.C. § 213(f) or within the presumption against extraterritorial application. *Cf. Smith v. Raytheon Co.*, 297 F. Supp. 2d 399, 403 (D. Mass. 2004) ("If there is any remaining doubt about whether Antarctica is a 'foreign country' and, thus, is excluded from the coverage of the FLSA's overtime rate requirement, the presumption against extraterritorial application of United States statutes should resolve that doubt in favor of exclusion.").

### 4. Partial Workweeks Abroad

On its face, section 213(f) is ambiguous with regard to how the FLSA applies to employees who work part of a week in the United States and part of the week abroad. *See* 29 U.S.C. § 213(f). The Department of Labor, the administering agency for the FLSA, has promulgated a regulation addressing this issue as follows:

> Work performed by employees in "a work place within a foreign country or within territory under the jurisdiction of the United States" other than those enumerated in this paragraph is exempt by this amendment from coverage under the Act. *When part of the work performed by an employee for an employer in any workweek is covered work performed in any State, it makes no difference where the remainder of such work is performed*; the employee is entitled to the benefits of the Act for the entire workweek unless he comes within some specific exemption.

29 C.F.R. § 776.7 n.20 (emphasis added); *see also* 29 C.F.R. § 776.4(a) ("The workweek is to be taken as the standard in determining the applicability of the [FLSA]."). Citing this regulation, a court in the Northern District of California held that, "so long as [the plaintiffs] worked part of the week in the United States . . . the entire week should be counted—*i.e.*, even if the rest of the work

was performed outside of the country or state." *Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982 EMC, 2013 WL 1758815, at *10 (N.D. Cal. Apr. 24, 2013).

Notably, in 1981, the Wage and Hour Division of the Department of Labor issued an opinion letter reiterating and clarifying the language in 29 C.F.R. § 776.7 n.20.[1] U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1981 WL 179037 (June 29, 1981). The opinion letter explains:

> We do not count as compensable hours under the Act time spent working in a foreign country, traveling from one foreign country to another, or *travel to and from a foreign country*, when performed during a workweek in which no work is performed in any area described in section 13(f). . . . When part of the work performed by an employee for an employer in any workweek is covered work performed in any State, the employee is entitled to the benefits of the Act for the entire workweek unless he or she comes within some specific exemption.

1981 WL 179037, at *1 (emphasis added). The letter then discusses several examples of how to calculate hours worked in different situations involving non-exempt employees who travel and work outside of the United States during part of a workweek.

In this case, the defendants seek summary judgment with respect to weeks in which the plaintiffs traveled to or from foreign job sites. The court finds the interpretation articulated in the Wage and Hour Division's opinion letter persuasive. When an employee performs all work during a workweek in a foreign country, merely stepping on or off a plane in the United States is not sufficient to bring the workweek within the scope of the FLSA's overtime requirements. *See* 1981 WL 179037, at *1 ("We do not count as compensable hours under the Act . . . travel to and from a foreign country, when performed during a workweek in which no work is performed in any area described in section 13(f)."); *cf. Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1363 (11th

---

[1] Courts give weight to the Wage and Hour Division's opinion letters when they interpret the Department of Labor's own ambiguous regulations. *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1308 n.6 (10th Cir. 2011).

10

Cir. 1997) ("Because the FLSA does not apply to work performed in a foreign country . . . Smith's damages would be confined to the salary he earned *before departing for Russia*." (emphasis added)); *DiGregorio v. Temple Univ.*, No. 79-3221, 1983 WL 2147, at *12 (E.D. Pa. Sept. 30, 1983) (holding that workweek in which plaintiff flew to Japan was not compensable under the FLSA).

Here, however, the relevant plaintiffs assert in sworn declarations that their work for Check-6 required them to begin working in the United States prior to visiting client worksites and to work in the United States after returning from client sites. [Doc. 297-2, p. 2 ¶ 8; Doc. 297-3, p. 2 ¶ 8; Doc. 297-4, p. 2 ¶ 8; Doc. 297-5, p. 2 ¶ 8; Doc. 297-6, p. 2 ¶ 8; Doc. 297-7, p. 3 ¶ 9]. Construing the declarations in the light most favorable to the non-moving parties, the court finds genuine disputes of material fact exist as to whether the plaintiffs performed work in the United States during workweeks in which they traveled to and from foreign client worksites. Consequently, the defendants are not entitled to summary judgment with respect to workweeks in which the plaintiffs traveled between the United States and foreign client worksites and were allegedly required to work in the United States prior to departure and/or after their return.

## IV. Conclusion

WHEREFORE, the Motion for Partial Summary Judgment [Doc. 277] of defendants Check-6, Inc., Yarema Sos, Brian Brurud, and Laura Owen is granted in part and denied in part. The defendants are granted summary judgment on the claims asserted by four of the plaintiffs—Aleksandr Goncharov, David Fuller, Edward Swanda, and Stephen Wall. The defendants are granted partial summary judgment on the claims of the remaining plaintiffs to the extent the claims concern workweeks in which all work was performed exclusively in a foreign country or aboard a

foreign-flagged vessel outside U.S. territorial waters and the Gulf of Mexico. The motion is otherwise denied.

IT IS SO ORDERED this 26th day of October, 2018.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE