IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOSEPH GOODLY, on behalf of himself
and other persons similarly situated,

    Plaintiffs,

v.

CHECK-6, INC., YAREMA SOS, BRIAN
BRURUD, DENNIS ROMANO, S. ERIC
BENSON, LAURA OWEN, and JOHN
DILLON,

    Defendants.

Case No. 16-CV-334-GKF-JFJ

## OPINION AND ORDER

In this action, the plaintiffs seek overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* Before the court is the defendants' Motion to Decertify Plaintiff's Collective Class [Doc. 301]. For the reasons set forth below, the court grants the motion.

### I. Procedural Background

On March 7, 2016, the named plaintiff, Joseph Goodly, commenced this action, asserting claims "on behalf of himself and all others similarly situated." [Doc. 1, p. 1 ¶ 1]. On November 4, 2016, the court conditionally certified the claims as a collective action pursuant to 29 U.S.C. § 216(b). [Doc. 45, p. 7]. The court defined the class of potential plaintiffs in this collective action as follows: "All persons who worked for Check-6, Inc. as 'Coaches' and were paid a 'day rate' at any time in the three years preceding the date of [the] order." [*Id.*]. Thereafter, eighteen opt-in plaintiffs filed consent forms indicating their intent to join the collective action. [Doc. Nos. 49–56, 58, 61–63, 75, 80, 83–85, 95]. After the close of discovery, the court ruled on four separate summary judgment motions. [Doc. 318; Doc. 343; Doc. 351; Doc. 352]. Among other things, the

court entered an order on October 26, 2018 granting the defendants summary judgment on the claims asserted by four of the opt-in plaintiffs—Aleksandr Goncharov, David Fuller, Edward Swanda, and Stephen Wall—pursuant to the foreign workplace exemption, 29 U.S.C. § 213(f). [Doc. 352, p. 11].

## II. Standard of Review

The FLSA permits legal action against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The FLSA does not define the phrase "similarly situated." *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). Nevertheless, courts must determine who is similarly situated in a "manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

The Tenth Circuit has approved an ad-hoc, two-step approach to § 216(b) certification claims. *See Thiessen*, 267 F.3d at 1102. Under this approach, a court "makes an initial notice stage determination of whether plaintiffs are similarly situated," requiring "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* (internal quotation marks omitted). Then, after discovery, the court makes a second, stricter similarly-situated determination considering "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations . . . ." *Id.* at 1103 (internal quotation marks omitted). The decision whether to decertify a collective action is generally within the district court's trial management discretion. *Id.* at 1105; *see also In re Chipotle Mexican Grill, Inc.*, No. 17-1028, 2017 WL 4054144, at *3 (10th Cir. Mar. 27, 2017).

## III. Analysis

The issue is whether the named plaintiff and the remaining fourteen opt-in plaintiffs are "similarly situated" within the meaning of 29 U.S.C. § 216(b), such that it would be appropriate to proceed to trial on all of their claims together. The court finds that the plaintiffs are not similarly situated and that, under the circumstances, decertification is warranted by individualized issues, which include, but are not limited to, the application of the foreign workplace exemption pursuant to 29 U.S.C. § 213(f) and the determination of each plaintiff's status as an independent contractor or employee.

### A. Foreign Workplace Exemption

Previously, the defendants moved for partial summary judgment on the ground that the overtime claims of certain plaintiffs fall, in whole or in part, within the foreign workplace exemption pursuant to 29 U.S.C. § 213(f). [Doc. 277]. For the reasons set forth in its Opinion and Order issued on October 26, 2018, the court granted the motion in part and denied it in part. [Doc. 352]. Among other issues, that Opinion and Order addressed a dispute between the parties regarding how the foreign workplace exemption applies to workweeks in which some of the plaintiffs worked part of the week abroad and claim to have worked part of the week in the United States. [Doc. 352, pp. 9–11]. It is undisputed that the plaintiffs worked in various locations with differing schedules. Application of the foreign workplace exemption will require an individualized analysis with respect to when and where each remaining plaintiff performed his or her work for Check-6, particularly in weeks involving travel to or from the United States. This would cause the proceedings to "devolve into numerous mini-trials, causing the jury to evaluate testimony from countless witnesses and other evidence that is unique to particular Plaintiffs, and thus incompatible with collective actions." *Blair v. TransAm Trucking, Inc.*, 309 F. Supp. 3d 977, 1010 (D. Kan.

3

2018) (quoting *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1104 (D. Kan. 2012)).

At oral argument, plaintiffs' counsel contended that the plaintiffs have the burden of proving work within the territorial jurisdiction of the United States, and that burden is the same with respect to all of the plaintiffs. Nevertheless, the circumstances of this case would require the court to instruct the jury regarding the foreign workplace exemption, which the jury would need to consider on a workweek-by-workweek and plaintiff-by-plaintiff basis when determining liability and damages. This would significantly increase the complexity of the trial and the risk of jury confusion. The plaintiffs argue that individualized damages calculations are not a sufficient reason to grant decertification, but the foreign workplace exemption adds complexity beyond that found in typical unpaid overtime calculations. Under the circumstances, the foreign workplace exemption cannot be applied on a class-wide basis, and therefore weighs in favor of decertification.

**B. Employment Status**

A central question in this case is whether the plaintiffs were "employees" or "independent contractors" for purposes of the FLSA, which establishes overtime protections for covered employees. *See* 29 U.S.C. § 207(a)(1). The court previously denied the parties' cross-motions for summary judgment as to this issue. [Doc. 318; Doc. 351]. As discussed in those prior decisions, the Tenth Circuit applies a multi-factor "economic realities" test to determine whether an individual is an independent contractor or employee. *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1235 (10th Cir. 2018) (citing *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998)). The test focuses on "whether the individual is *economically dependent* on the business to which he renders service, or is, as a matter of economic fact, in business for himself." *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 506 (10th Cir. 2012) (quoting *Doty v. Elias*, 733 F.2d 720, 723 (10th Cir. 1984)).

The Tenth Circuit instructs that, in focusing on the economic realities of the worker's economic dependence on the business, the economic realities ordinarily turn on six factors:

(1) the degree of control exercised by the alleged employer over the worker,

(2) the worker's opportunity for profit or loss,

(3) the worker's investment in the business,

(4) the permanence of the working relationship,

(5) the degree of skill required to perform the work, and

(6) the extent to which the work is an integral part of the alleged employer's business.[1]

*Paragon*, 884 F.3d at 1235. The overarching inquiry depends on the totality of the circumstances, and no single factor is dispositive. *Id.* (citing *Johnson v. Unified Gov't of Wyandotte Cty.*, 371 F.3d 723, 729 (10th Cir. 2004)).

Because the economic realities test is fact intensive and may require an individualized analysis, "a number of courts have determined that whether an individual is an independent contractor or an employee is not appropriate for determination on a class-wide basis." *Roberson v. Rest. Delivery Developers, LLC*, 320 F. Supp. 3d 1309, 1320 (M.D. Fla. 2018) (granting motion to decertify) (quoting *Demauro v. Limo, Inc.*, No. 8:10-CV-413-T-33AEP, 2011 WL 9191, at *3 (M.D. Fla. Jan. 3, 2011)); *see also In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, 662 F. Supp. 2d 1069, 1083 (N.D. Ind. 2009) (declining to certify FLSA collective action because economic realities factors required individualized examination).

---

[1] In their supplemental brief, the plaintiffs discuss the "hybrid" test, which focuses on an employer's *right* to control the means and manner of a worker's performance. [Doc. 355-1, pp. 1–2]. The plaintiffs cite *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014), but that was a Title VII case, not an FLSA case. The plaintiffs have not identified any Tenth Circuit decisions applying the hybrid test in the FLSA context. *Cf. Oestman v. Nat'l Farmers Union Ins. Co.*, 958 F.2d 303, 305 (10th Cir. 1992) (explaining that courts typically apply the hybrid test in Title VII and ADEA cases, whereas the economic realities test "is most often applied to cases arising under the [FLSA]").

Here, many of the relevant facts that must be considered under the economic realities test vary between the plaintiffs. For example, the plaintiffs pursued various other business opportunities and had various other sources of income, including military pensions. [Doc. 290, pp. 1–3 ¶¶ 1–9; Doc. 311-1, pp. 1–4 ¶¶ 1–9]. Some of the plaintiffs worked as airline pilots for major airlines concurrently with their relationship with Check-6. [Doc. 290, p. 2 ¶ 5; Doc. 311-1, p. 3 ¶ 5]. Such facts alone are not dispositive because an employee can work for multiple employers; however, they are relevant to assessing each particular plaintiff's economic dependence on Check-6. Indeed, the Tenth Circuit has held that evaluating the "degree of control" factor includes consideration of the worker's "ability to work for other employers." *Paragon*, 884 F.3d at 1235 (noting that worker "had engaged in flooring and plumbing work for other companies" as support for determination of independent contractor status); *see also Perez v. Off Duty Police Servs.*, Inc., No. 3:13-CV-935-DJH, 2016 WL 10695150, at *8 (W.D. Ky. June 17, 2016) (holding that "other employment and sources of income" were relevant to determination of employee status). The plaintiffs here are ex-military officers who followed their service with practice in various professions or vocations (*e.g.*, airline pilot, lawyer, electrician, plumber, and aircraft mechanic)—a variable that is likely to bear upon each individual plaintiff's "ability to work for other employers."

Furthermore, the plaintiffs worked for different Check-6 clients and had different responsibilities at job sites. In their deposition testimony, the plaintiffs offered individualized accounts regarding the degree of their autonomy while working for Check-6 and their expectations with respect to the permanence of the working relationship. [*See* Doc. 290, pp. 4–8 ¶¶ 12–13, 25–30 (collecting testimony)]. Because the relevant facts vary between the plaintiffs, the "totality of

the circumstances" for purposes of the economic realities test is unique to each plaintiff.  *See Blair*, 309 F. Supp. 3d at 1003.  Therefore, this issue also weighs in favor of decertification.

The plaintiffs argue that decertification will prompt the same issue to be litigated in several separate cases, wasting limited judicial time and resources.  However, "the efficiency gained by holding one trial as opposed to many cannot be obtained at the expense of a defendant's due process rights."  *Blair*, 309 F. Supp. 3d at 1010 (quoting *Scott v. Chipotle Mexican Grill, Inc.*, No. 12-CV-8333 (ALC)(SN), 2017 WL 1287512, at *9 (S.D.N.Y. Mar. 29, 2017)).  Although decertification precludes the opt-in plaintiffs from trying this case in a single trial, they "likely benefitted from the implementation of class-wide discovery on many of the issues relevant to their FLSA claims."  *Green*, 888 F. Supp. 2d at 1104.

## IV.  Conclusion

WHEREFORE, the defendants' Motion to Decertify [Doc. 301] is granted.  The court decertifies the collective action and dismisses the claims of the opt-in plaintiffs without prejudice.  To avoid prejudice to the opt-in plaintiffs who may choose to file their own cases, the court invokes its equity power to toll the applicable statute of limitations for twenty days following the issuance of this order.  The case remains pending as to the individual claims of the named plaintiff, Joseph Goodly.

IT IS SO ORDERED this 1st day of November, 2018.

*[signature]*
GREGORY K. FRIZZELL, CHIEF JUDGE